38 C.C.P.A. (Patents)

## In re DRISCH et al.
### Patent Appeals No. 5799.

United States Court of Customs
and Patent Appeals.
June 5, 1951.

Nathaniel L. Leek, New York City, for appellants.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C. of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in his final rejection of claims 9, 10, and 11 in appellants' application for a patent on a method of treating absorbent textiles and its product.

No claims were allowed and all the claims stand or fall together. Claims 9 and 10 are directed to methods which differ from each other merely in scope. Claim 11 relates to the product resulting from the method of claim 9. Claim 9 is illustrative and reads as follows: "9. A method of materially reducing the hygroscopicity or swelling index of a regenerated cellulose textile and lowering its shrinkage without substantially changing its degree of polymerization, which comprises disposing said textile in a closed vessel, evacuating the atmosphere in said vessel until it is substantially free of oxygen, and then from an outside source introducing dry saturated steam under pressure of 1.5 to 15 kg per sq cm into said vessel and maintaining said steam pressure in said vessel for a period of a few minutes to four hours, the time varying inversely as the pressure."

The references relied upon are: Brandenberger 1,544,885 July 7, 1925; Andrews 2,119,261 May 31, 1938; Brandwood 2,127,638 Aug. 23, 1938.

The basic issue presented for determination was thus succinctly and correctly stated in the brief for appellants: "The essential step involved in appellants' process is the evacuation of the chamber prior to introduction of the steam thereto. Appellants admit in their specification that Brandenberger Patent No. 1,544,885, one of the references cited by the Examiner, discloses a process which includes the same steps except for the prior evacuation of the vessel. However, it is conceded by the Examiner and by the Board of Appeals that this modification of Brandenberger's practice (evacuating of the chamber) produces very desirable results, but they went on to hold the claims unpatentable primarily on the ground that this step was disclosed by Andrews in his Patent No. 2,119,261. Appellants take issue with this holding for the reasons to be pointed out."

Brandenberger's contribution to the art was the basic concept of treating synthetic textiles in a closed vessel with dry saturated steam under pressure to render them less hygroscopic. The purpose of his process like that of the present appellants was to reduce the ability of the cellulose fiber to absorb moisture, a function technically known as hygroscopicity.

Appellants vigorously assert here, as they did before the tribunals of the Patent Office,

that the claimed process defined by the appealed claims constitutes a patentable improvement over the Brandenberger process, the carrying out of which resulted in the depolymerization or deterioration of the molecular structure of the treated cellulose as well as its discoloration.

Appellants' improvement eliminates the undesirable features of the Brandenberger invention by the process of conducting the steaming operation of the textile, such as a viscose rayon yarn, in the atmosphere of a closed vessel, such as an autoclave, from which all air or oxygen has been evacuated prior to the injection of the steam. Depolymerization and discoloration of the treated material is thus prevented by appellants' method, and the swelling index of the synthetics, which is used to measure the hygroscopicity, is thus reduced.

Appellants' basic discovery was the adverse or deleterious effects of oxygen on the material treated by Brandenberger and the procedure by which those detrimental defects were eliminated. The essence of appellants' invention is thus defined in their specification: "The objects of the invention are accomplished, in general, by subjecting a regenerated cellulose textile to the action of dry saturated steam, under pressure in a closed vessel, in the absence of oxygen."

The disclosure of the patent to Andrews is directed not to the precise process defined by the appealed claims but to the process of rapidly drying synthetic material in a closable casing, vessel, or chamber. What Andrews specifically claimed was: "The method of rapidly drying synthetic material such as artificial silk, rayon or regenerated cellulose in web or yarn form which consists in placing the synthetic material in a drying chamber, filling said chamber from an outside source with superheated water vapor which is substantially free from air and thereby expelling all air from the chamber * * *."

Andrews used a drying current of heated air having a temperature of approximately 200° F. and provided special apparatus "to prevent any possible leakage of air into said chamber" during the drying operation therein, if the material being dried did not give off sufficient water vapor to keep the chamber filled with superheated water vapor. As to the inventive results, Andrews alleges in his specification: "* * * the drying operation is not only greatly expedited due to the relatively high temperature of the drying medium, but the drying is accomplished without any resultant change in color of the material and without any diminution in either the elasticity or breaking strength of the material and also without any undesirable shrinkage therein. * * *"

From the outset, appellants have argued with respect to his drying operation that the disclosure of Andrews "refers to the elimination of air in the steam, not in the chamber." The examiner of Division 63, A. H. Winkelstein, in rebuttal of that argument correctly pointed to the specific language employed in the specification by Andrews wherein the patentee taught the elimination of air or oxygen not only from the steam but also from the chamber; and, moreover, that the: "Applicants [appellants here] concede that vacuum treatment of textiles has been used for various purposes. However, it is seen in the light of the art relied upon that the broad treatment of textiles under vacuum includes the combination of vacuum plus steam and that vacuum has been proposed or used as a supplement to the steam treatment to improve the steam treatment. [Quoting Sinclair Refining Co. v. Coe, 1943, C.D. 109.]"

A careful scrutiny of the claims asserted by appellants and the disclosure of the art of record, together with the concurring decisions of the tribunals of the Patent Office, lead us to approve the correctness of the following conclusion expressed in the brief of the Solicitor for the Patent Office: "Even though prior evacuation of the chamber, as suggested by the appellants, may be somewhat more effective as a means of eliminating air, it is, as noted by the Board, one of the most obvious ways of eliminating the effects of undesired gases, and has long been used for this purpose in many different arts. Accordingly, the use of a vacuum fails to define invention over the Andrews procedure and its addition to the Brandenberger process would not be deserving of patent protection."

The view hereinbefore expressed is fortified by the fact that the claimed procedure is not restricted by appellants to their process hereinbefore described, but also includes the process in which the step of removing the oxygen from the steam, as disclosed by Andrews, is substituted for their vacuum treatment. Thereby, as appellants state in their specification, "Results substantially identical to those obtained in the preceding example are obtained."

Not every improvement is entitled to the allowance of claims for a patent. That is definitely true where the applicant has obtained a new result but merely followed the teaching of the prior art. In re Stover, 146 F.2d 299, 32 C.C.P.A., Patents, 823.

We find no manifest error in the concurring decisions of the Patent Office and the decision of the Board of Appeals is accordingly affirmed.

Affirmed.